UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORA ELISA GARZON,

                          Plaintiff,

        -v-                                                CIVIL ACTION NO. 24 Civ. 5429 (JLR) (RFT)

                                                           **<u>REPORT AND RECOMMENDATION</u>**

BUILDING SERVICES INC., MICHAEL A. GOMEZ;
AND GUADALUPE CASTILLO,

                          Defendants.


**TO THE HONORABLE JENNIFER L. ROCHON, UNITED STATES DISTRICT JUDGE:**

Plaintiff Dora E. Garzon brought this action against Defendants Building Services Inc.

("BSI"), Michael A. Gomez, and Guadalupe Castillo, seeking recovery of minimum and overtime

wages and related relief pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et

seq., the New York Labor Law ("NYLL") §§ 190 et seq., and the New York Wage Theft Prevention

Act ("WTPA"), NYLL § 195. (*See* ECF 1, Compl. ¶¶ 1-2.) Your Honor referred this case to me for a

determination whether Plaintiff is entitled to a default judgment and for an inquest on

damages, if any. (*See* ECF 23, Order of Ref.) Plaintiff seeks $5,120 in unpaid wages; $25,512 in

overtime compensation; $11,568 in spread-of-hours premiums; $42,200 in liquidated damages;

$73,005 in statutory damages for late payment of wages; $10,000 statutory damages under the

WTPA; $8,414.50 in attorneys' fees; and $7,500 in prejudgment interest, for a total requested

award of $183,319.50. (*See generally* ECF 19, Pl.'s Mem. in Supp. of Mot. for Default Judgment

("Pl.'s Mem.").)

For the reasons set forth below, I respectfully recommend that the motion for a default judgment (ECF 18) be GRANTED, with a judgment being awarded in favor of Plaintiff against Defendants for $50,611.72 and post-judgment interest, which amount reflects:

1. $38,334.00 in damages, consisting of a) $6,768.00 in unpaid weekly wages; b) $11,208.00 in unpaid overtime premium wages; c) $1,191.00 in spread-of-hours premium wages; and d) $19,167.00 in liquidated damages for unpaid wages, unpaid overtime wages, and unpaid spread-of-hours premium wages (a+b+c+d);

2. $3,864.07 in pre-judgment interest calculated as of July 2, 2025, accruing from April 9, 2023, plus $4.73 per day for every day thereafter until the Clerk of Court enters a final judgment;

3. $149.15 in interest on late payments for late payments; and

4. Reasonable costs and attorneys' fees in the amount of $8,264.50; and

5. Post-judgment interest pursuant to 28 U.S.C. § 1961.

*See Zavala v. Top Shelf Elec. Corp*., No. 20-CV-9437 (JGLC) (GWG), 2024 WL 1543605, at *11 (S.D.N.Y. Apr. 10, 2024), *report and recommendation adopted*, 2024 WL 2116457 (S.D.N.Y. May 10, 2024).

## BACKGROUND

**I.    Factual Background**

Unless otherwise indicated, I draw facts from the Complaint (ECF 1), the Declaration of Peter H. Cooper, Esq. ("Cooper Decl.") (ECF 20), the Affidavit of Dora E. Garzon Dated October 18, 2024 ("First Garzon Aff.") (ECF 21), and the Affidavit of Dora E. Garzon Dated May 13, 2025 ("Second Garzon Aff.") (ECF 27). Given Defendants' default, I accept as true all well-pleaded

factual allegations in the Complaint, except as to damages. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127, 137 (2d Cir. 2011) (holding that "[i]t is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint").

BSI is a commercial cleaning company incorporated and headquartered in New York State. (*See* ECF 1, Compl. ¶ 22; ECF 21, Second Garzon Aff. ¶ 10.) Plaintiff worked directly for BSI as a cleaner from December 30, 2021, until June 7, 2024, cleaning New York City offices, daycare centers, hospitals, cafes, and medical clinics that hired BSI to provide cleaning services. (*See* ECF 1, Compl. ¶¶ 6-7, 22-23).

Plaintiff worked between nine and seventeen hours per day, five or six days per week, meaning that she worked 45 to 102 hours per week. (*See* ECF 1, Compl. ¶ 29; ECF 21, First Garzon Aff. ¶ 12; ECF 27, Second Garzon Aff. ¶ 9.) Plaintiff worked over ten hours in one shift on most days. (*See* ECF 21, First Garzon Aff. ¶ 16.) Plaintiff recorded her working hours in a notebook, which she sent to Castillo, to whom Plaintiff reported, and who "scheduled, supervised, and controlled" Plaintiff's work for BSI and gave Plaintiff her paychecks; Gomez signed Plaintiff's paychecks. (ECF 1, Compl. ¶¶ 8, 15, 18, 30.) Castillo and Gomez had the authority to hire and fire BSI employees and decided the number of hours BSI employees were required to work and the amount of pay that BSI employees received. (*See id.* ¶¶ 13-18.)

Between December 30, 2021 and January 21, 2022, Plaintiff's hourly rate was $15; thereafter, and until the end of Plaintiff's employment with BSI on June 7, 2024, her hourly rate was $16. (*See id.* ¶¶ 6, 31.) Plaintiff was scheduled to be paid twice per month. (*See* ECF 27, Second Garzon Aff. ¶ 7.) However, Plaintiff was not paid for all the hours she worked, and she

was not paid overtime compensation or a spread-of-hours premium. (*See* ECF 1, Compl. ¶¶ 33-34, 37; ECF 27, Second Garzon Aff. ¶¶ 3-5, 8-9.) Plaintiff never received wage statements or W-2 forms. (*See* ECF 21, First Garzon Aff. ¶ 19.) Additionally, there was a period of eight weeks when Plaintiff was paid no wages at all, and three of her paychecks were returned by the bank for insufficient funds (*see id.* ¶ 18); it is unclear whether the eight weeks when Plaintiff was paid no wages at all overlapped with the three periods when her paychecks were returned by the bank for insufficient funds.

## II.    Procedural History

On July 17, 2024, Plaintiff filed her Complaint, alleging FLSA and NYLL violations for unpaid wages, unpaid overtime, unpaid spread-of-hours premiums, failure to provide an accurate written statement accounting for hours worked, failure to comply with the notice and record keeping requirements, and failure to pay timely wages. (*See generally* ECF 1, Compl.) Plaintiff filed affidavits of service. (*See* ECF 6, Aff. of Serv. for BSI; ECF 7, Aff. of Serv. for Gomez; ECF 8, Aff. of Serv. for Castillo.) BSI's answer was due on August 14, 2024; Castillo's answer was due on August 19, 2024; and Gomez's answer was due on August 22, 2024. (*See* ECF 12, Order.) None of the Defendants timely responded to the Complaint. (*See id.*) On September 4, 2024, Plaintiff filed a letter-motion requesting that the Court grant Defendants an extension of time until September 18, 2024 to respond to the Complaint (*see* ECF 10, Letter-Motion), which letter-motion was granted (*see* ECF 11, Order). Defendants failed to respond to the Complaint by October 1, 2024. (*See* ECF 12, Order.)

On October 3, 2024, the Clerk of the Court issued a certificate of default (ECF 15). On October 18, 2024, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff filed a

motion for default judgment against all Defendants. (*See* ECF 18, Mot. for Default J.) On

October 21, 2024, Plaintiff served that motion on Defendants. (*See* ECF 22, Cert. of Serv.) Your

Honor referred this matter to me for a determination whether default judgment should issue

and for an inquest after default. (*See* ECF 23, Order of Ref.)

On October 25, 2024, I ordered that Defendants had until November 12, 2024 to

respond to Plaintiff's application for default judgment. (*See* ECF 24, Order.) Plaintiff filed

confirmation that a copy of that order was mailed to each Defendant's address. (See ECF 25,

Cert. of Serv.) No Defendant responded to Plaintiff's application for default judgment.

On April 29, 2025, I ordered Plaintiff to supplement her submission in further support of

her claimed damages, explaining in a supplemental affidavit (1) the basis for claiming that she

worked 65 hours per week when the Complaint alleges that she worked between 50 and 80

hour per week, (2) what she meant when she says she was paid for 15 days, and (3) the basis

for any estimates on which Plaintiff relies. (*See generally* ECF 26, Order to Supplement.) On May

13, 2025, Plaintiff filed her affidavit and attached three exhibits in response to the Order to

Supplement. (*See* ECF 27, Second Garzon Aff.; Ex. 1; Ex. 2; Ex. 3.) Defendants each received

copies of the supplemental affidavit by mail. (*See* ECF 28, Cert. of Serv.)

## LEGAL STANDARDS

### I.    Obtaining a Default Judgment

A party seeking default judgment must follow the steps listed in Rule 55 of the Federal

Rules of Civil Procedure. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry &*

*Constr., LLC,* 779 F.3d 182, 186-87 (2d Cir. 2015); Fed. R. Civ. P. 55. Under Rule 55(a), when a

"party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a).[1] Afterwards, under

Rule 55(b)(1), should the party still fail to appear or move to set aside the default, the Court

may enter a default judgment. *See* Fed. R. Civ. P. 55(b)(1).

In considering whether to enter default judgments, courts are guided by the factors of:

"(1) whether the default was willful; (2) whether ignoring the default would prejudice the

opposing party; and (3) whether the defaulting party has presented a meritorious defense.*" J&J

Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774,

at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010)).

Courts must be cautious in awarding default judgment because it is an extreme remedy that

should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

Under Local Rule 55.1, a party seeking entry of default under Rule 55(a) must file (1) a

request to enter the default judgment; (2) an affidavit or declaration showing that service

requirements were satisfied and that the defaulting party failed to defend; (3) a proposed

Clerk's Certificate of Default; and (4) a certificate showing that these documents were

"personally served on, or mailed to the last known residence . . . or business address" of the

defaulting party or parties. Loc. Civ. R. 55.1; *see also Robertson v. Doe,* No. 05-CV-7046 (LAP),

2008 WL 2519894, *3 (S.D.N.Y. June 9, 2008) (explaining that notice of the motion for default

judgment must be sent to the defaulting party). If the defaulting party still fails to appear or

move to set aside the default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

---

[1]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

It is within the discretion of the Court to grant a motion for default judgment.

*O'Callaghan v. Sifre,* 242 F.R.D. 69, 73 (S.D.N.Y. Mar. 14, 2007). However, courts must be cautious in awarding default judgment because it is an extreme remedy that should only be granted as a last resort. *See Meehan*, 652 F.2d at 277; *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. Sept. 1, 1999). In considering whether to enter a default judgment, the Court may consider many factors including (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense. *See O'Callaghan v. Sifre,* 242 F.R.D. 69, 73 (S.D.N.Y. Mar. 14, 2007). Because default judgment is a disfavored remedy, "when doubt exists as to whether the default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993).

**II.    Determining Liability**

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then determine if the allegations accepted as true establish liability for the defendants as a matter of law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). On a motion for default judgment, "the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J Sports*, 2014 WL 4467774, at *5.

If the Court finds that the well-pleaded allegations demonstrate liability, the Court then analyzes whether the plaintiff "has provided adequate support for [the requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). However, the Court may not

award damages if the Court finds that the complaint fails to state a claim on which relief may

be granted. *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *4

(S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted,* 2020 WL 30344 (S.D.N.Y. Jan. 2,

2020).

## III.    Determining Damages

Even if a default judgment is warranted because a party failed to defend, the allegations

of damages are not accepted as true. *See Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK)

(JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), *report and recommendation adopted*,

2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). Once liability is established, the Court conducts an

inquiry on the amount of damages. *See id.*

The plaintiff bears the burden of providing evidence to prove the extent of damages.

*See Dunn v. Advanced Credit Recovery Inc*., No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2

(S.D.N.Y. Mar. 1, 2012). The plaintiff "must produce evidence sufficient to establish her

damages with reasonable certainty." *See Tackie v. Keff Enters. LLC,* No. 14-CV-2074 (JPO), 2014

WL 4626229, at *1 (S.D.N.Y. Sept. 16, 2014). The plaintiff's evidence must be admissible. *See*

*Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July

13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *see*

*also House v. Kent Worldwide Mach. Works, Inc*., 359 F. App'x 206, 207 (2d Cir. 2010)

("[D]amages must be based on admissible evidence.").

To calculate damages, a hearing may not be necessary if the Court relies "upon detailed

affidavits and documentary evidence," supplemented by the Court's "personal knowledge of

the record" to ensure that there is a basis for the specified damages. *Id.*; *see also Transatlantic*

*Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). A plaintiff's submitted documents should provide a "sufficient basis from which to evaluate the fairness of" the claimed damages. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

In situations where an employer failed to produce accurate or complete payroll records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687 (1946)). When defendants fail to produce records, a court may credit the plaintiffs' "recollections regarding their hours and pay in conducting its inquest," but "must ensure that the [p]laintiffs' approximations and estimates are reasonable and appropriate." *Coley v. Vanguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018). The default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## DISCUSSION

I.    **Default Judgment**

Plaintiff made the filings required by Local Rule 55.1, and the Clerk of Court issued the Certificate of Default. (*See* ECF 13, Proposed Clerk's Cert. of Default; ECF 14, Declaration of Peter H. Cooper in Supp. of Proposed Clerk's Cert. of Default; ECF 15, Clerk's Cert. of Default; ECF 22, Cert. of Serv.) And the factors considered by courts determining whether to enter default judgments militate in favor of granting a default judgment here.

9

First, because Defendants have repeatedly failed to appear, even though Defendants were properly served and received adequate notice, the Court may infer that Defendants' default is willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that a defendant's non-appearance in an action in addition to failing to respond to a complaint and subsequent motion for default judgment "indicate willful conduct").

Second, ignoring the default may prejudice Plaintiff, because there is no other means for Plaintiff to recover her lost wages. *See Inga v. Nesama Food Corp*., No. 20-CV-0909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that a FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).

Third, there is no meritorious defense, because Defendants have not presented any defense. *See Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether these defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense.").

## II.    Liability

### A.    Jurisdiction and Venue

The Court has federal question jurisdiction over Plaintiff's FLSA claims, which arise under federal law, *see* 28 U.S.C. § 1331 (federal question jurisdiction), and the Court has supplemental

jurisdiction over the NYLL claims, which share the same common nucleus of operative facts as the FLSA claims. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction).

Personal jurisdiction is "a necessary prerequisite to entry of a default judgment." *See Reilly v. Plot Com*., No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016). Courts must assess "whether the defendant is subject to jurisdiction under the law of the forum state – here, New York" – and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Id.* New York law authorizes any federal district in this state to exercise personal jurisdiction over domestic corporations, *see* CPLR § 301, and over non-domiciliary defendants who transact business within the state, *see* CPLR § 302(a)(1). The Due Process Clause is satisfied if the court has general or specific personal jurisdiction over the defendant. *See Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 115 (E.D.N.Y. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)).

The Court has personal jurisdiction over BSI because it is incorporated in New York State and was properly served by Plaintiff. (*See* ECF 1, Compl. ¶¶ 9, 22; ECF 6, BSI Aff. of Serv.) Gomez and Castillo were owners, supervisors, or managing agents of BSI and were served by Plaintiff. (*See* ECF 1, Compl. ¶¶ 12, 16; ECF 7, Gomez Aff. of Serv.; ECF 8, Castillo Aff. of Serv.) Plaintiff has not established Defendants Gomez's and Castillo's domicile, but this District may assert specific personal jurisdiction over them under CPLR § 302(a)(1). Where, as here, the Court has personal jurisdiction over a corporation, under CPLR § 302(a)(1), the Court may also assert personal jurisdiction over its corporate officers "who ha[ve] played a part in corporate activities that gave rise to the action . . . due to the agency relationship between the corporation and the

11

officer[s]." *Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019); *see also Holguin v. Quality Furniture NY LLC*, 23-CV-0004 (AT) (RFT), 2024 WL 4954048, at *5 (S.D.N.Y. Nov. 8, 2024) (asserting specific personal jurisdiction over an individual defendant who served as an officer of a domestic corporate defendant and determined wages of the plaintiff in an unpaid-wages default case), *report and recommendation adopted*, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025); *Palmer v. eCapital Corp.*, No. 23-CV-4080 (DEH), 2024 WL 3794715, at *5 (S.D.N.Y. Aug. 13, 2024) (denying a motion to dismiss for lack of personal jurisdiction by the non-domiciliary individual defendant officers of the corporate defendant due to their purposeful business activities in New York, which activities had an "articulable nexus" to the claims in the case); *Suriel v. Cruz,* No. 20-CV-8442 (VSB) (SLC), 2022 WL 1750232, at *8 (S.D.N.Y. Jan. 10, 2022) (finding that the individual defendants, who owned and operated the corporate defendant, were subject to the Court's personal jurisdiction), *report and recommendation adopted*, 2022 WL 1751163 (S.D.N.Y. May 31, 2022); *Inga*, 2021 WL 3624666, at *6 (same).

Here, Plaintiff alleges that Defendants Gomez and Castillo are managing agents who have actively "participate[d] in the day-to-day operations," "exercised control over the terms and conditions of Plaintiff's employment," "determine[d] rates and methods of pay" and "work schedules," and "supervise[d] and control[ed] work of the . . . Plaintiff." (ECF 1, Compl. ¶¶ 12-14, 16-19.) Additionally, Defendant Gomez "personally signed paychecks given to Plaintiff." (ECF 1, Compl. ¶ 15.) Both individual Defendants were properly served by Plaintiff with the summons and Complaint. (*See* ECF 7, Gomez Aff. of Serv.; ECF 8, Castillo Aff. of Serv.)

Accordingly, both Gomez and Castillo have played a part in BSI's activities that gave rise to this action, and thus the Court has personal jurisdiction over them.

Under the general venue statute, a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391(b). Plaintiff alleges that venue is proper in this District under section 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in New York City. (*See* ECF 1, Compl. ¶¶ 4, 7, 22.) Plaintiff also alleges that she worked for Defendants at locations throughout New York City. (*See* ECF 1, Compl. ¶¶ 22, 27; ECF 21, First Garzon Aff. ¶¶ 3, 5, 10.) However, there are two federal districts within New York City, and Plaintiff does not specify the extent to which she worked in this District as opposed to the Eastern District of New York. In any event, any challenge to venue was waived by Defendants' failure to appear or timely answer the Complaint. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *see also Alonso v. New Day Top Trading, Inc.*, No. 18-CV-4745 (PAE) (DCF), 2021 WL 4691320, at *1 n.3 (S.D.N.Y. Oct. 7, 2021); *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 108 (E.D.N.Y. 2014); *Gerety v. Sunrise Exp., Inc.*, No. 95-CV-2090 (HB), 1996 WL 19047, at *2 (S.D.N.Y. Jan. 18, 1996) (holding that the defendant had "waived his defense of improper venue by defaulting").

B.    Statute of Limitations

Under the FLSA, the statute of limitations is two years but can be extended to three years if the violation was willful. *See* 29 U.S.C. § 255(a). A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Lopez v. Emerald Staffing, Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *6 (S.D.N.Y. Feb. 26, 2020) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988)). Damages are also tied to the statute of limitations under the FLSA, and so Plaintiff can only "recover damages for pay periods as far back as the statute of limitations reaches." *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299-300 (E.D.N.Y. 2018).

Under the NYLL, a plaintiff must commence an action within six years. *See* NYLL § 198(3). Plaintiff worked for Defendants from December 30, 2021, to June 7, 2024. (*See* ECF 1, Compl. ¶ 6.) She commenced this action on July 17, 2024. (*See generally* ECF 1, Compl.) Therefore, Plaintiff's allegations fall within the NYLL six-year limitations period. Accordingly, I respectfully recommend that Plaintiff be awarded damages under the NYLL, such that willfulness need not be ascertained under FLSA. *See Lopez*, 2020 WL 915821, at *6 (finding that where the plaintiffs would be provided equal or greater relief under the NYLL's 6-year statute of limitations than under either the 2-year non-willful or 3-year willful FLSA statute of limitations, the Court will award damages under the NYLL).

C.    FLSA and NYLL Elements

FLSA requires that employers pay their employees a minimum wage. *See* 29 U.S.C. § 206(a). Under FLSA, a plaintiff must show that (1) [s]he was the defendant's employee; (2)

14

[her] work involved interstate activity; and (3) [s]he worked hours for which [s]he did not receive minimum or overtime wages. *See Tackie*, 2014 WL 4626229, at *2. The NYLL requires similar allegations except that the NYLL does not require plaintiffs to "show a nexus with interstate commerce or a minimum amount of sales." *Id.* at *2 n.2.

To recover for overtime compensation under either the NYLL or the FLSA, a plaintiff must "provide some degree of specificity in order to sufficiently plead a [plausible] overtime claim" that she worked compensable overtime in a workweek longer than 40 hours. *See Herrera v. Comme Des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023); *see also Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (elaborating that a "plausible" claim in these circumstances includes sufficient facts for a court draw a reasonable inference of defendant's liability for the alleged misconduct).

Additionally, the NYLL includes a "spread of hours" provision that permits covered employees "to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours." *Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. Sept. 30, 2011); *see also Perez Garcia v. Hirakegoma Inc.,* No. 17-CV-7608 (SLC), 2020 WL 1130765, at *4 (S.D.N.Y. Mar. 9, 2020). The spread-of-hours pay is eligible only to workers paid at the minimum-wage level or lower. *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 249 (E.D.N.Y. 2024) (citing *Pinovi v. FDD Enters., Inc.*, 13-CV-2800 (GBD) (KNF), 2015 WL 4126872, at *5 (S.D.N.Y. July 8, 2015) (denying the plaintiff's spread-of-hours pay claim because the plaintiff's hourly wage was greater than the minimum wage)).

I address these requirements below.

1.  Employment Relationship

In interpreting the FLSA, courts afford the term employer "an expansive definition with striking breadth." *Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019). "[C]ourts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017). An employee can have multiple employers; if there are multiple employers, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA." *Id.* at 421.

In assessing whether individuals qualify as employers under FLSA and NYLL, Courts in this District assess whether the individuals "possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05, 109 (2d Cir. 2013) (stating factors that determine an employment relationship, including the alleged employer's power to hire and fire employees, supervise and control employees' work schedule, determine the rate and method of payment, and maintain employment record); *see also Weng v. New Shanghai Deluxe Corp*, No. 19-CV-9596 (ER), 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("[C]ourts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL.").

As a result of Defendants' default, I accept as true all well-pleaded facts in the Complaint, including the allegation that BSI directly employed Plaintiff to perform cleaning services in New York City, that Gomez and Castillo, among other actions, set the work schedules and pay rates for BSI employees, and that Castillo had hired her. (*See* ECF 1, Compl. ¶¶ 6-7,

22-23; ECF 21, First Garzon Aff. ¶ 3.) These allegations are sufficient to plead that BSI, Gomez, and Castillo were Plaintiff's employers. *See Morales v. Anyelisa Rest. Corp.,* No. 18-CV-7641 (JGK), 2019 WL 3430106, at *4 (S.D.N.Y. July 30, 2019) (concluding that a plaintiff had sufficiently pleaded employer liability as to individual defendants with control over work schedules and rate and method of compensation); *Guan v. Lash Princess 56 Inc.*, No. 22-CV-2552 (KPF), 2023 WL 2242050, at *11 (S.D.N.Y. Feb. 27, 2023) (finding that a plaintiff had adequately pleaded that an individual was an employer under FLSA where the plaintiff alleged, among other things, that she had been hired by the individual defendant).

2.  Interstate Commerce

If Your Honor accepts my recommendation that Plaintiff be allowed to recover under the NYLL rather than FLSA, there is no need for her to demonstrate a nexus with interstate commerce. Otherwise, for a FLSA claim, Plaintiff must establish engagement in interstate commerce either through her "personal engagement in interstate commerce or enterprise coverage through the employer's engagement in interstate commerce." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353-54 (E.D.N.Y. 2015). While Plaintiff does not allege personal engagement in interstate commerce, she alleges that BSI had gross revenue of over "$500,000 per annum" and that at all relevant times, BSI "had more than two employees handling, or otherwise working with tools, materials, equipment and goods that previously had moved in interstate commerce." (ECF 1, Compl. ¶¶ 20-21.) Accepting these well-pleaded allegations as true because of Defendants' default, I conclude that Plaintiff has established the interstate commerce element of a FLSA claim. *See Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a

restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" was sufficient to satisfy the interstate commerce requirement), *report and recommendation adopted*, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019).

### 3.  Unpaid Minimum Wages

To state a claim for unpaid minimum wages under FLSA or the NYLL, a plaintiff must allege that she was not paid the relevant minimum wage for her work. *See Tackie,* 2014 WL 4626229, at *3.

Plaintiff alleges that Defendants did not pay her any wages for eight weeks. (*See* ECF 1, Compl. ¶ 37.) Accepting these allegations as true because of the default, I conclude that Plaintiff has established her claims for unpaid minimum wages under either FLSA or the NYLL. *See Hart v. Rick's Cabaret Int'l Inc.,* No. 09-CV-3043 (JGK), 2010 WL 5297221, at *4 (S.D.N.Y. Dec. 20, 2010) (holding that the plaintiffs' allegations that "they were paid no wages in connection with their work" was sufficient); *Anderson v. Hudson Nat'l Golf Club, Inc.*, No. 23-CV-522 (KMK), 2024 WL 4241359, at *7 (S.D.N.Y. Sept. 19, 2024) ("[T]he applicable federal and state minimum wages are somewhat beside the point . . . because Plaintiffs allege that [their employer] paid them nothing for their work.").

### 4.  Unpaid Overtime Compensation

To state a claim for failure to pay overtime compensation under FLSA or the NYLL, a plaintiff must allege that she did not receive overtime wages for hours she worked in excess of 40 hours per week at a rate of one and one-half times the employee's regular rate of pay. *See Tackie*, 2014 WL 4626229, at *3; *see also* 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs.

§ 142-2.2 (2025). A plaintiff "need not identify the particular weeks in which [she] worked

overtime hours where [she] alleges that [she] typically worked overtime hours and provides the

number of overtime hours worked." *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 239

(S.D.N.Y. 2024).

Plaintiff states that throughout her employment, she "worked well over 40 hours per

week" (ECF 1, Compl. ¶¶ 28-29, 34), "between nine (9) and seventeen (17) hours per day, five

(5) to six (6) days per week," but that she was not paid overtime premium wages. (ECF 21, First

Garzon Aff. ¶¶ 12-15.) Accepting these allegations as true because of Defendants' default, I

conclude that Plaintiff has adequately established her claims for unpaid overtime compensation

under FLSA and the NYLL.

5.    Unpaid NYLL Spread-of-Hours Premium Wages

The NYLL provides that an employer must pay an employee "one hour's pay at the basic

minimum wage rate, in addition to the minimum wage" requirement for any day when the

employee's "spread of hours exceeds 10 hours." 12 N.Y. Comp. Codes R. & Regs. § 142-2.4

(2025); *see also Suriel v. Cruz*, 20-CV-8442 (VSB) (SLC), 2022 WL 1750232 at *13 (S.D.N.Y. Jan.

10, 2022) ("Under the NYLL, employers must pay covered employees one extra hour of

compensation, at the basic minimum wage rate, for each day on which they worked more than

ten hours."). Only employees who earn minimum wage "are eligible for spread-of-hours" pay.

*Jimenez,* 744 F. Supp. 3d at 249.

Plaintiff alleges that from December 30, 2021 through January 21, 2022, her hourly

wage was the applicable New York State minimum wage of $15 per hour, and that from January

1, 2024 through June 7, 2024, her hourly wage was the applicable New York State minimum

wage of $16 per hour (*see* ECF 1, Compl. ¶¶ 6, 31). *See* NYLL §§ 652(1)(a), (1-a)(a) (setting New

York State minimum wage as $15 per hour for both large and small employers for 2021-2023

and $16 per hour starting in 2024). Plaintiff also alleges that "[m]ost days," she worked more

than ten hours per day but that she never received a spread-of-hours premium. (*See* ECF 1,

Compl. ¶¶ 34, 58; ECF 21, First Garzon Aff. ¶ 16.) Accepting these allegations as true due to

Defendants' default, I conclude that Plaintiff has established her claims of failure to pay a

spread-of-hours premium on days she worked more than 10 hours during the periods from

December 30, 2021 through January 21, 2022, and from January 1, 2024 through June 7, 2024.

      6.   NYLL Failure To Pay Timely Wages

Under the NYLL, employers must pay manual workers weekly and no later than seven

days after the end of the week in which the wages were earned. *See Tackie*, 2014 WL 4626229,

at *4. In other words, twice monthly payments, or payments every other week, are "in violation

of Labor Law § 191(1)(a)." *Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 1144 (1st Dep't

2019); *see also* NYLL § 190(4). The New York Department of Labor has explained that manual

workers include "employees who spend more than 25 percent of their working time performing

physical labor," *Tzilin v. Jimmy G. Constr. Corp*., No. 23-CV-4047 (ENV) (MMH), 2024 WL

4309775, at *12 (E.D.N.Y. Sept. 26, 2024), including cleaning, *see Krawitz v. Five Below, Inc.,* No.

22-CV-2253 (LDH) (ARL), 2023 WL 6385711, at *3 n.4 (E.D.N.Y. Sept. 29, 2023).

Courts in this District have held that "temporary deprivation of money to which a

plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing to assert

a claim for the late payment of wages," *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 345

(S.D.N.Y. Feb. 12, 2024), because "workers paid on an untimely basis necessarily incur a

concrete harm due to the time value of money . . . ." *E.g., Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 415 (S.D.N.Y. 2023); *see also Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 64 (S.D.N.Y. 2023) ("The loss of the time value of money owed to plaintiff is not a harm that might occur, but one that has occurred."); *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 53 (S.D.N.Y. 2023) (collecting cases).

New York State courts are currently divided on whether a private right of action exists under NYLL § 191 to recover damages for an employer's failure to pay timely wages. *See Chakma v. Sushi Katsuei, Inc.*, No. 23-CV-7804 (KPF), 2025 WL 429730, at *6 n.4 (S.D.N.Y. Feb. 7, 2025). In *Vega,* the First Department held that there is a private right of action. *See Vega,* 175 A.D. at 1146. In *Grant v. Global Aircraft Dispatch, Inc.*, the Second Department concluded that there is no private right of action, stating that the "statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment." *Grant*, 223 A.D.3d 712, 715 (2d Dep't 2024).

Although federal courts typically must "follow the state law decisions of state intermediate appellate courts," *Bryant v. Buffalo Exch., Ltd.,* 23-CV-8286 (AS), 2024 WL 3675948, at *1 (S.D.N.Y. Aug. 6, 2024), because there is a split among the appellate divisions, "this Court's task is to predict how the [Court of Appeals] would resolve the uncertainty or ambiguity from the conflicting appellate decisions." *Phoenix v. Cushman & Wakefield U.S., Inc.,* 24-CV-0965 (PMH), 2025 WL 357793, at *4 (S.D.N.Y. Jan. 31, 2025); *see also Bryant,* 2024 WL 3675948, at *3 (explaining that, when there is a split among the appellate divisions, "a federal court is not bound by the law of the department that would apply if the case were filed in state

court where the federal court sits, but rather must predict how the Court of Appeals would rule").

In *Zachary*, this Court issued a detailed and well-reasoned opinion predicting how the New York Court of Appeals would resolve this issue, reasoning that although NYLL § 198 "does not explicitly reference late wage payments," the provision "authorizes employees to bring wage claims for underpayments] that violate article 6 of the NYLL"; the Court concluded that because Article 6 "includes the pay frequency requirements in Section 191," the absence of explicit language in section 198 "is irrelevant." *Zachary,* 716 F. Supp. 3d at 350. The Court also concluded that a private right of action can be inferred from the statute, because "(i) the plaintiff is one of the class for whose particular benefit the statute was enacted, (ii) recognition of a private right of action would promote the legislative purpose, and (iii) creation of such a right would be consistent with the legislative scheme." *Id.* at 350-51. Several other Courts in this District have reached the same result. *See Phoenix*, 2025 WL 357793, at *5 (S.D.N.Y. Jan. 31, 2025); *Espinal v. Sephora USA*, Inc., No. 22-CV-3034 (PAE) (GWG), 2024 WL 4751279, at *3 (S.D.N.Y. Sept. 19, 2024); *Charles v. United States of Aritzia, Inc.*, No. 23-CV-09389 (MMG), 2024 WL 4167502, at *5 (S.D.N.Y. Sept. 12, 2024); *Bryant*, 2024 WL 3675948, at *3; *Carrasquillo v. Westech Sec. & Investig. Inc.*, No. 23-CV-04931 (MKV), 2024 WL 4227795, at *6 (S.D.N.Y. Sept. 17, 2024). I therefore conclude that NYLL § 191 provides a private right of action to recover damages for an employer's failure to pay timely wages.

A 2025 amendment to section 198(1-a) created an exception to the liquidated damages rule for violations of the timeliness of wage payments provision. Under the revised statute, liquidated damages are not available when an employer pays wages "on a regular payday, no

less frequently than semi-monthly" and is a first-time violator. *See* NYLL § 198(1-a)(i). In those cases, damages are limited to "no more than [100%] of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day the payment [was] late," at the statutory interest rate set by the superintendent of financial services pursuant to section 14-a of the Banking Law. *See id.* The revised statute expressly provides for liquidated damages where two conditions are met: (1) an untimely payment conduct occurred after the effective date of the amendment, May 9, 2025, and (2) the employer has, after the effective date, been subject to one or more final "findings and orders" for violations of section 191(1)(a), where no administrative or judicial review is pending and the time to initiate such review has expired. *See* NYLL § 198(1-a)(ii). In those cases, liquidated damages equal to 100% of the wages due are available. These revisions to the statute reinforce my conclusion that the prior version of the statute provided a private right of action; otherwise, the revised version would not need to distinguish between available penalties for conduct before and after the operative date of the revisions.

Because of Defendants' default, I accept Plaintiff's well-pleaded allegations as true. Thus, Plaintiff has established that: Plaintiff was a cleaner for BSI and therefore qualifies as a manual worker (*see* ECF 1, Compl. ¶¶ 22, 35, 73); and Defendants paid Plaintiff twice monthly, except when they "refused to pay her" (*see id.* ¶¶ 36-37), and therefore failed to pay Plaintiff on a weekly basis as required by the NYLL. Accordingly, Plaintiff has established her claim under NYLL § 191.

7.  NYLL Statutory Wage Notices and Statements

Under the NYLL, an employer is required to provide a notice containing the "rate or rates of pay and basis thereof"; "allowances, if any, claimed as part of the minimum wage"; and "the regular pay day designated by the employer." *See* NYLL § 195(1)(a). Failure to do so within ten business days of the first day of employment creates a penalty of $50.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 100 days. *See* NYLL § 198(1-b). The NYLL also requires a wage statement to be provided to an employee with each payment of wages. *See* NYLL § 195(3); *see also Rosario v. Prasad Cosm. Surgery,* 21-CV-2944 (NCM) (AYS), 2025 WL 486636, at *2 (E.D.N.Y. Feb. 13, 2025) (stating the requirement of providing wage notice upon hiring of an employee and regulating wage statements throughout an employee's employment). Failure to do so creates a penalty of $250.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 20 workdays. *See* NYLL § 198(1-d).

A court may deny these statutory damages if a plaintiff does not have standing under Article III of the U.S. Constitution. *See Ramirez*, 674 F. Supp. 3d at 55. When a plaintiff has no injury traceable to the violation of the wage notice and statement requirements, that plaintiff does not have standing to recover. *See id*. Therefore, to state a claim for violation of section 195, a plaintiff must demonstrate Article III standing by "show[ing] some causal connection between the lack of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing Inc.,* 113 F. 4th 300, 308 (2d Cir. 2024). A plaintiff "cannot assume this conclusion without analysis or rely on speculation and conjecture," but instead must allege that if accurate notices had been provided, that plaintiff would have undertaken "advocacy and plausibly would have

24

avoided some actual harm or obtained some actual benefit . . . ." *Id.*; *see also Chapman v. City Winery NY – Pier 57, LLC*, No. 23-CV-2778 (LGS), 2023 WL 8280608, at *2-3 (S.D.N.Y. Nov. 30, 2023) (holding that a plaintiff had pleaded "more than a mere technical statutory violation" by alleging that "Defendant prevented Plaintiff from determining and seeking payment for his precise amount of unpaid hours," which sufficed to establish Article III standing).

Plaintiff has not alleged an injury that is traceable to Defendants' violations of the wage notice and statement requirements under the NYLL. In similar unpaid-wage default cases, courts have held that, where a plaintiff merely alleges a failure to receive accurate wage notices and statements without alleging a resulting injury, Article III standing is not satisfied. *See Pinheiro v. Interior Mogul LLC*, No. 22-CV-9856 (JHR) (RWL), 2024 WL 4716346, at *8 (S.D.N.Y. Aug. 28, 2024); *see also Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423 (JLR) (SN), 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 13, 2023) (holding that a plaintiff's assertion of entitlement to statutory damages based solely on the failure to receive wage statements and notices was insufficient to establish standing).

Plaintiff alleges that Defendants failed to provide her with accurate written wage notices and statements in compliance with NYLL § 195. (*See* ECF 1, Compl. ¶¶ 63, 66-69.) However, Plaintiff does not allege that she would have undertaken advocacy or would have avoided harm if accurate notices had been provided. While the Complaint does allege that "Defendants' record keeping practices were intended to, and did in fact, disguise the actual number of hours Plaintiff worked, in order to avoid paying her for her full hours worked [ ] and[ ] overtime due" (ECF 1, Compl. ¶ 64), it does not allege that she "would have acted differently had [she] received the wage notices and statements as required." *Pinheiro*, 2024 WL

4716346, at *8 (stating that a plaintiff alleging the defendants' act disguising "the actual

number of hours the Plaintiff worked and to avoid paying . . . minimum wage . . . and overtime

wage" was not enough to satisfy an Article III standing). Therefore, I respectfully recommend

that Your Honor should not find Defendants liable for Plaintiff's NYLL statutory wages and

notices claim.

**III.    Damages**

    A.    <u>Evidentiary Basis</u>

        Even if a default judgment is warranted because a party fails to defend, the allegations

of damages are not accepted as true. *See Am. Jewish Comm.*, 2016 WL 3365313, at *3. The

plaintiff "must produce evidence sufficient to establish her damages with reasonable certainty."

*Tackie*, 2014 WL 4626229, at *1; *see also Transatlantic Marine Claims Agency,* 109 F.3d at 111;

*Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1,

2013).

        Plaintiff filed an affidavit attesting that Defendants did not compensate her for overtime

work and eight weeks of work; Defendants paid her twice per month; and three of Defendant's

checks were returned for insufficient funds. (*See* ECF 21, First Garzon Aff. ¶¶ 15-18.) Plaintiff

filed a supplemental affidavit providing more detail on the number of hours worked. (*See*

*generally* ECF 27, Second Garzon Aff.) Plaintiff attested that her hours worked fluctuated week

by week; Plaintiff worked for over 116 hours during some periods (approximately 58 hours per

week) but was never paid for overtime; Plaintiff worked for 122 hours for the first half of June

2022 (approximately 61 hours per week) and was paid the minimum wage without overtime or

spread-of-hours pay; and her attorney calculated that "she worked an average of sixty-five

hours per week," as "simply an average/estimate, which is necessary due to the lack of available contemporaneous time and pay records." (*Id.* ¶¶ 2, 3, 5, 6, 8.)

Defendants have not responded to the Court's orders or the Proposed Findings, nor have they provided any contrary evidence. I conclude that Garzon has met her evidentiary burden of proving damages and that an in-person hearing is unnecessary because her submission, combined with Defendants' admissions resulting from their default, provides a sufficient basis for evaluating the fairness of his damages request. *See Fustok*, 873 F.2d at 40; *Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery*, No. 14-CV-6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (finding that a court may determine that there is a basis for damages based on a review of the pleadings and supplemental documents rather than at a hearing).

B.    <u>Wages</u>

Plaintiffs are "not entitled to recover under both FLSA and NYLL for overtime earned during the same period." *Lopez v. Royal Thai Plus, LLC*, 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *10 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). The Court may exercise its discretion to award "damages under the statute providing the greatest amount of relief." *Id.*

1.    Unpaid Minimum Wages

Plaintiff worked 116 hours for the first two weeks of May 2022 and states that she expected to receive $1,856 (116 hours times the regular rate of pay at $16 per hour) but was paid only $1,616. (*See* ECF 27, Second Garzon Aff. ¶ 3.) Her minimum wages were underpaid by $240 ($1,856 less $1,616).

27

Plaintiff was paid no wages at all from around April 12, 2024, to June 7, 2024, a period of eight weeks. (*See* ECF 21, First Garzon Aff. ¶ 18.) At the time, the federal minimum wage was $7.25, 29 U.S.C. § 206(a)(1)(C) (setting the federal minimum wage at $7.25 as of July 24, 2009), and the New York State minimum wage for New York City $16.00, *see* NYLL § 652(1-a)(a). Therefore, I respectfully recommend that Plaintiff recover under the NYLL.

Plaintiff provided a range of hours she worked in the Complaint for the several years of work involved. Although courts in this Circuit generally adopt the midpoint or average when plaintiffs in default cases provide a range of hours worked, this approach is typically applied when the range is relatively narrow, generally involving a difference of fewer than ten hours. *See*, *e.g.*, *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 244 n.28 (S.D.N.Y. 2020) (accepting as reasonable the plaintiffs' method of using the midpoint of 69 hours for a weekly range of 66 to 72 hours worked per week); *Mitchell v. Parham*, No. 14-CV-8620 (RWS), 2015 WL 5783808, at *3 n.1 (S.D.N.Y. Sept. 30, 2015) (approving the plaintiffs' averaging method); *Miranda v. Astoria Provisions, LLC*, No. 19-CV-2923 (EK) (PK), 2020 WL 6370058, at *6 (E.D.N.Y. July 24, 2020) (using the average of the range of 51.64 to 53 hours worked per week as reasonable basis for calculating damages), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *4 n.5 (E.D.N.Y. Oct. 12, 2023) (adjusting weekly work hours provided by the plaintiff to the median number of hours in each range for the purpose of damages calculations).

However, when a plaintiff alleges a wide range of hours worked, it is reasonable for the court to adopt the low end of the range because the court cannot be reasonably certain how

frequently the plaintiff worked longer hours. *See Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK) (SJB), 2022 WL 940504, at *9 (E.D.N.Y. Jan. 25, 2022) (adopting the low end of the range where the plaintiff alleged working for "about 60-84 hours each week," reasoning that the court could not "say with reasonable certainty that [the plaintiff] worked more than the low end"); *see also Yunganaula v. Garcia*, No. 19-CV-6247 (EK) (SJB), 2021 WL 5984851, at *2 n.10 (E.D.N.Y. Dec. 17, 2021) (adopting the magistrate judge's recommendation of using the low end of the range where the plaintiff had alleged that he had "worked . . . 12 to 13 hours a day . . . for 2 to 3 months" during a certain period).

Plaintiff worked between nine and 17 hours per day, five or six days per week, meaning that she worked 45 to 102 hours per week. (*See* ECF 21, First Garzon Aff. ¶ 12.) Plaintiff worked over ten hours in one shift on most days. (*See* ECF 21, First Garzon Aff. ¶ 16.) Based on Plaintiff's statements, I can be reasonably certain only that Plaintiff worked at least nine hours per day and over ten hours on most days for at least five days a week; I interpret over ten hours to be eleven hours, since I cannot reasonably be certain of how frequently Plaintiff worked longer hours. The inference to be drawn from this attestation is that Garzon worked at least 51 hours each week, including the eight-week period when she received no pay at all: based on Plaintiff's statement that she worked between nine and 17 hours per day and five or six days per week (ECF 1, Compl. ¶ 29,) I conclude that she worked a minimum of 45 hours per week (nine hours per day, five days a week); from the additional information she worked over ten hours in one shift on most days (ECF 21, First Garzon Aff. ¶ 16,) I conclude that 51 hours per week (at least 11 hours per day three days per week and nine hours per day twice a week) is a

29

reasonable estimate of the number of hours Plaintiff worked each week, other than the weeks

for which she provided more specific information.[2]

At the applicable minimum wage of $16.00, Garzon should have been paid weekly

wages of $816.00 per week for the period she received no wages, calculated a $16.00 per hour

times 51 hours. In the total eight-week period, Garzon should have been paid $6,528.00 in

weekly wages, calculated at $816.00 per week times eight weeks.

Her total unpaid minimum wages is $6,768.00 ($6,528 plus $240).

2.  Unpaid Overtime Premium wages

Defendants employed Plaintiff from December 30, 2021, to June 7, 2024. (*See* ECF 21,

First Garzon Aff. ¶ 3; ECF 1, Compl. ¶ 27.) Defendants paid Plaintiff an hourly wage of $15.00

from December 30, 2021, to January 21, 2022. (*See* ECF 21, First Garzon Aff. ¶ 13; ECF 1, Compl.

¶ 31.) Defendants paid Plaintiff an hourly wage of $16.00 from January 22, 2022 to April 12,

2024, and no wage from April 15, 2024 to June 7, 2024. (*See* ECF 21, First Garzon Aff. ¶¶ 13,

18.)

From December 30, 2021 to January 21, 2022, a period of three weeks, Plaintiff should

have been paid an overtime premium of $7.50 per hour for each overtime hour worked,

---

[2]       In her supplemental affidavit, Plaintiff provides precise numbers for hours worked for
three two-week periods: 116 hours for the first two weeks of May 2022 (*see* ECF 27, Second
Garzon Aff. ¶ 3), 116 hours from May 16 through May 27, 2022 (approximately two weeks) (*see
id.* ¶ 4), and 122 hours for the first half of June 2022 (*see id.* ¶ 4). Based on these figures, the
Plaintiff worked 58 hours per week for four weeks and 61 hours per week for two weeks, which
is less than the 65-hour weekly average estimated using the midpoint method (*see id.* ¶ 6); this
information on actual hours worked provides further support for using a lower estimate of 51
hours per week worked.

calculated at one-half times the applicable wage of $15.00 per hour. Plaintiff worked 11

overtime hours per week, resulting in $82.50 in unpaid overtime premium wages per week,

calculated at $7.50 per hour times 11 overtime hours. In the three-week period from December

2021 to January 2022, Plaintiff should have been paid an additional $247.50 in overtime

premium wages, calculated at $82.50 per week times three weeks.

From January 24, 2022 to April 12, 2024, a period of 115 weeks, Plaintiff should have

been paid an overtime premium of $8.00 per hour for each overtime hour worked, calculated

at one-half times the applicable wage of $16.00 per hour. The shortfall in overtime premium

payments for the period is calculated as follows:

- Except for the six weeks for which Plaintiff states the exact hours she worked,

  from January 24, 2022 to April 12, 2024, Plaintiff worked 11 overtime hours per

  week, resulting in $88.00 in unpaid overtime premium wages per week,

  calculated at $8.00 per hour times 11 overtime hours. In the 109-week period for

  which Plaintiff did not provide exact hours, Plaintiff should have been paid an

  additional $9,592.00 in overtime premium wages, calculated at $88.00 per week

  times 109 weeks.

- From May 2, 2022 until May 27, 2022, Plaintiff worked an average of 58 hours

  per week for four weeks. (*See* ECF 27, Second Garzon Aff. ¶¶ 3-4.)[3] In this four-

  week period, Plaintiff worked 18 overtime hours per week, resulting in $144.00

  in unpaid overtime premium wages per week, calculated at $8.00 per hour times

---

[3]     For this period, Plaintiff worked 116 hours per period, or 58 hours per week. (*See* ECF
27, Second Garzon Aff. ¶¶ 3-4.)

18 overtime hours, and $576.00 in overtime premium wages, calculated at

$144.00 per week times four weeks.

- From May 30, 2022 until June 10, 2022, Plaintiff worked an average of 61 hours

  per week for approximately two weeks. (*See id.* ¶ 5.)[4] During this period, Plaintiff

  worked 21 overtime hours per week, resulting in $168.00 in unpaid overtime

  premium wages per week, calculated at $8.00 per hour times 21 overtime hours.

  In this two-week period, Plaintiff should have been paid an additional $336.00 in

  overtime premium wages, calculated at $168.00 per week times two weeks.

For the eight-week period from April 15, 2024 to June 7, 2024, Plaintiff should have

been paid an overtime premium of $8.00 per hour for each overtime hour worked, calculated

at one-half times the applicable minimum wage of $16.00 per hour. Plaintiff worked 11

overtime hours per week, resulting in $88.00 in unpaid overtime premium wages per week,

calculated at $8.00 per hour times 11 overtime hours. In this eight-week period, Plaintiff should

have been paid $704.00 in overtime premium wages, calculated at $88.00 per week times eight

weeks.

For the entire period Plaintiff worked for Defendants, she should have been paid an

additional $11,208.00 in overtime premium wages.

   3.   Unpaid Spread-of-Hours Wages

Plaintiff has established her claims of failure to pay a spread-of-hours premium on days

she worked more than ten hours during the periods from December 30, 2021 through January

---

[4]    For the first half of June 2022, Plaintiff worked for 122 hours, or 61 hours per week. (*See* ECF 27, Second Garzon Aff. ¶ 5.)

21, 2022, and from January 1, 2024 through June 7, 2024, when she was paid the New York

State minimum wage. (*See* ECF 1, Compl. ¶¶ 29-31, 34.) From December 30, 2021 through

January 21, 2022, a period of three weeks, Plaintiff should have been paid for one extra hour at

the applicable minimum hourly wage of $15.00 for each of the three days per week that she

worked more than ten hours per day, for a total of $135.00 ($45.00 dollars per week times

three weeks). (*See id.* ¶ 31, 34.) For the period from January 1, 2024 through June 7, 2024, a

period of 22 weeks, Plaintiff should have been paid for one extra hour at the applicable

minimum hourly wage of $16.00 for each of the three days per week that she worked more

than ten hours per day, for a total of $1,056.00 ($48.00 dollars per week times 22 weeks). For

the entire period, Plaintiff should have been paid $1,191.00 in spread-of-hours wages.

    4.    Liquidated Damages for Unpaid Weekly,
          Overtime, and Spread-of-Hours Wages

        Under both the FLSA and the NYLL, a plaintiff who has demonstrated that she was

improperly denied wages may recover the reimbursement of these unpaid wages (comprising

unpaid weekly, overtime, and spread-of-hours wages) as well as an additional equal amount of

liquidated damages. *See Burns v. Scott*, 635 F.Supp.3d 258, 280 (S.D.N.Y. 2022); *Carrera v. DT

Hosp. Grp.*, No. 19-CV-4235 (RA) (KHP), 2021 WL 6298656, at *8 (S.D.N.Y. Nov. 1, 2021)

(specifying that unpaid wages comprise "unpaid minimum wage, overtime, and spread of

hours" for purpose of calculating liquidated damages), *report and recommendation adopted*,

No. 19-CV-4235 (RA) (KHP), 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021). A court has discretion to

deny liquidated damages if the employer can show that its failure to provide the correct

amount in wages was in "good faith and that he had reasonable grounds for believing that his

act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. The same applies for the

NYLL. *See* NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both

the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir.

2016). A plaintiff should recover liquidated damages only under one statute – the one that

provides greatest relief. *See Burns*, 635 F. Supp. 3d at 281. The NYLL allows for recovery of both

pre-judgment interest and liquidated damages, *see Gamero v. Koodo Sushi Corp.*, 272 F. Supp.

3d 481, 515 (S.D.N.Y. 2017), while the FLSA does not, *see Mondragon,* 2019 WL 2551536, at

*11. Thus, I respectfully recommend that Plaintiff should be permitted to recover liquidated

damages under the NYLL rather than FLSA.

Having defaulted, Defendants have failed to show that their failure to provide the

correct amount in wages was in good faith and that there were reasonable grounds for

believing their acts were not in violation of the FLSA or the NYLL. *See Mondragon*, 2019 WL

2551536, at *11. Thus, Plaintiff is entitled to liquidated damages in an equal amount to her

unpaid weekly, overtime, and spread-of-hours wages. *See Burns*, 635 F. Supp. 3d at 281;

*Carrera*, 2021 WL 6298656, at *8. I respectfully recommend that Plaintiff be awarded

$19,167.00 in total liquidated damages, which is equal to the amount of her compensatory

damages under the NYLL.

5. Liquidated Damages for Late Wage Payments

Plaintiff requests additional liquidated damages for Defendants' untimely payment of

wages in violation of NYLL § 191. (ECF 1, Compl. ¶¶ 71, 78.) Prior to the May 9, 2025

amendment, New York Labor Law section 198(1-a) allowed a manual worker to recover "an

additional amount as liquidated damages equal to one hundred percent of the total amount of

the wages found to be due," including for untimely payment of wages, and Courts awarded

liquidated damages in cases involving late payments. *See, e.g., Ramirez*, 674 F. Supp. 3d at 53

(awarding liquidated damages for late payments where payments were made twice monthly

and calculating those damages by multiplying the regular rate of pay by the hours worked

during each week of late payment); *see also Bemejo v. Shaker Contractors, Corp.*, No. 22-CV-

1427 (JPC), 2022 WL 17251667, at *5 (S.D.N.Y. Nov. 28, 2022) (using the same calculation

method and holding that unpaid overtime wages may not be included for the purpose of

calculating late payments as liquidated damages); *Carrera*, 2021 WL 6298656, at *10-11 (same

calculation method).

The 2025 amendment to section 198(1-a), however, created an exception to the

liquidated damages rule for violations of section 191(1)(a), which governs timeliness of wage

payments. Under the revised statute, liquidated damages for an employer that pays wages "on

a regular payday, no less frequently than semi-monthly" and is a first-time violator, are limited

to "no more than [100%] of the lost interest found to be due for the delayed payment of wages

calculated using a daily interest rate for each day the payment [was] late"; the applicable

interest rate is the statutory interest rate set by the superintendent of financial services

pursuant to section 14-a of the Banking Law. NYLL § 198(1-a)(i)*.* The statute expressly provided

for higher liquidated damages where two conditions not present here are met: (1) the untimely

payments occurred after the effective date of the amendment, May 9, 2025, and (2) the

employer had, after the effective date, been subject to one or more final "findings and orders"

for violations of section 191(1)(a), where no administrative or judicial review was pending and

the time to initiate such review has expired. NYLL § 198(1-a)(ii). In such cases, liquidated damages equal to 100% of the late wages are available.

Plaintiff alleges Defendants paid her "twice monthly," rather than weekly as required by section 191(1)(a) and failed to pay her on time "for the first seven [ ] days she worked during each pay period." (ECF 1, Compl. ¶¶ 36, 45, 75.) All the underlying conduct occurred prior to the amendment's effective date of May 9, 2025, because Plaintiff's employment ended on June 7, 2024. (*See id*. ¶ 27.) Moreover, although I identified a prior case in which Defendants BSI and Gomez were sued for a section 191(1)(a) violation in the Eastern District of New York, the report and recommendation was issued in February 2025, before the amendment took effect, and the district court does not yet appear to have formally adopted the report and recommendation. *See Miller v Bldg. Services Inc.,* 24-CV-4814 (NJC) (SIL), 2025 WL 959081, at *8-9 (E.D.N.Y. Feb. 26, 2025). Since a magistrate judge's recommendation is not a final "finding and order" unless and until it is adopted by the district court, *see Falvey Cargo Underwriting Ltd*. *v. Zim Integrated Shipping Servs. Ltd*., No. 19-CV-11495 (LTS) (SDA), 2024 WL 553962, at *1 (S.D.N.Y. Jan. 10, 2024), Defendants cannot be said to have been subject to a final order post-amendment. Accordingly, the preconditions to section 198(1-a)(ii)'s higher liquidated damages calculation do not apply in this case.

While Plaintiff does not specify how many weeks involved late payments, she alleges uninterrupted employment from December 30, 2021 to June 7, 2024 (*see* ECF 1, Compl. ¶ 27), that she was not paid at all for her final eight weeks of work (*see id.* ¶ 37), and that she was not paid in full for the first two weeks of May 2022 (*see* ECF 27, Second Garzon Aff. ¶ 3). Thus,

Plaintiff's late wage claims cover her semi-monthly payments made in full but late for a period

of 119 weeks.[5]

When Defendants paid Plaintiff on a semi-monthly basis and in full, those payments,

although untimely under New York Labor Law section 191(1)(a), were made on a regular

schedule not "less frequently than semi-monthly." NYLL § 198(1-a)(i). Since there is no final

prior finding or order against Defendants under section 191(1)(a) after the 2025 amendment's

effective date, *see* NYLL § 198(1-a)(ii), Defendants are treated as first-time violators.

Accordingly, under section 198(1-a)(i), Plaintiff is not entitled to liquidated damages in the

amount of 100% of the late-paid wages. Instead, she may recover interest only, up to 100% of

the interest accrued during the delay, calculated at the statutory daily rate set by the Banking

Law.

Accepting Plaintiff's allegations as true, the Complaint provides sufficient detail for the

Court to estimate the number of late-payment weeks falling into this first category. Plaintiff

states that she was paid twice per month, once for "the first fifteen [ ] days," and once for "the

second half of the month" (*See id*. ¶ 7.) Thus, it is reasonable to assume that the twice monthly

wages were paid on the 15th and the last day of each month. (*See id*.; *see also Carrera*, 2021

WL 6298656, at *11 (assuming twice monthly wages were paid on the 15th and last day of each

month)). Since the first day and the last day of Plaintiff's employment fell on Fridays, I assume

---

[5]        Plaintiff also alleges that she was not paid at all for the final eight weeks of her
employment (*see* ECF 21, First Garzon Aff. ¶ 18) and that she was paid $240 less than the
minimum wage for a two-week period in May 2022 (*see* ECF 27, Second Garzon Aff. ¶ 3). These
instances of non-payment are covered by her damages for failure to pay minimum wages,
rather than as damages for late payments.

that Plaintiff received her wage payments on Fridays. Based on Plaintiff's declaration that she was paid "twice a month," I further assume that Plaintiff was paid late two weeks out of each month for the months she was paid (i.e., the first and third weeks of most months). *See id.* at *11 n.12 (assuming that the plaintiffs were paid late two weeks per month when the plaintiffs declared that they were paid twice monthly). And since Plaintiff states that she was not paid at all for the last eight weeks she worked (i.e., April 15, 2024, to June 7, 2024) (*see* ECF 1, Compl. ¶ 37; *see also* ECF 21, First Garzon Aff. ¶ 18), it is reasonable to assume that she was paid the first two weeks of April 2024, because otherwise, Plaintiff would have alleged that she was not paid for the last nine weeks of work.

Over the 119 weeks that Plaintiff worked and was paid, she was paid late on 59 occasions: from December 30, 2021 to the end of January 28, 2022, Plaintiff received two weeks of late payments (i.e., the first and third weeks of January 2022) at a pay rate of $15 per hour; from January 31, 2022 to April 5, 2024, Plaintiff received 57 weeks of late payments at a pay rate of $16 per hour.

Plaintiff is entitled to interest on her late wages, calculated using a daily rate derived from the 16% annual interest rate set by section 14-a of the Banking Law. A 16% annual interest rate corresponds to approximately 0.044% per day (i.e., 16% divided by 365 days). Interest on late wages is calculated by applying that daily rate to the amount of wages due, multiplied by the number of days the payment was late.

For the period from December 30, 2021 through the end of January 2022, Plaintiff should receive interest on late payments at her regular hourly rate of pay of $15.00 for two weeks, for a total of $1,530.00 ($15.00 per hour times 51 hours times two weeks). For February

2022 through April 2024, Plaintiff should receive interest on late payments at her regular hourly

rate of pay of $16.00 for 57 weeks. Within this 57-week period, Plaintiff worked 58 hours per

week in May 2022, and thus Plaintiff should receive interest on late payments at her regular

hourly rate of pay of $16.00 for two weeks, for a total of $1,856.00 ($16.00 per hour times 58

hours times two weeks); for June 2022, she worked 61 hours per week and thus should receive

interest on late payments for a total of $976 ($16.00 per hour times 61 hours times one week).

For the remaining 54 weeks, Plaintiff did not provide precise hours, and so she should receive

interest on late payments at her regular hourly rate of pay of $16.00 for 54 weeks, for a total of

$44,064.00 ($16 per hour times 51 hours times 54 weeks). For the entire period from December

30, 2021 through April 12, 2024, the total late-paid wages was $48,426.00.

Since Plaintiff was paid semi-monthly, it is reasonable to assume that Plaintiff was paid

one week or seven days late for every late-paid wage she received. Thus, the total interest on

late-paid wages from December 30, 2021 through April 12, 2024 is $149.15, calculated at

$48,426.00 late-paid wages times 0.044% daily interest rate times seven days. Accordingly, I

respectfully recommend that Plaintiff receive a total of $149.15 in interest on late payments

from December 30, 2021 through April 12, 2024.

6.   Statutory Damages – Failure To Provide Wage Statements and Payroll Notice

In the event that Your Honor disagrees with my recommendation that Plaintiff should

not receive statutory damages for Defendants' failure to provide her wage statements and

payroll notice, I include a calculation of the damages for those violations. Plaintiff worked 891

days (including weekends and holidays) for Defendants. Therefore, her cumulative damages

exceed the $5,000 limit for each statutory penalty, and she would receive the full $5,000 for

failure to the provide payroll notice under NYLL § 198(1-b) (reached after 100 days) and the full

$5,000 for failure to provide wage statements under NYLL § 198(1-d) (reached after 20 days),

for a total of $10,000.00 in statutory damages.

       7.   Pre-Judgment Interest

Plaintiff seeks prejudgment interest on amounts due for compensatory damages under

the NYLL. The Second Circuit has held that, "even where a plaintiff is awarded liquidated

damages under the NYLL, prejudgment interest still is appropriate," because state liquidated

damages are punitive in nature. *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234

(JGK) (JLC), 2016 WL 4704917, at *18 (Sept. 8, 2016). By contrast, she could not recover

prejudgment interest and liquidated damages awarded under the FLSA, which presumes that

liquidated damages include prejudgment interest. *See id.* I therefore respectfully recommend

that Plaintiff be awarded pre-judgment interest on his NYLL minimum wage, overtime, and

spread-of-hours claims. *See Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238 (KPF), 2021 WL

22716, at *4, 6 (S.D.N.Y. Jan. 4, 2021) (stating that plaintiffs' prejudgment interest applies to

"back wage," which includes minimum, overtime, and spread-of-hours wages).[6] However, a

plaintiff cannot recover prejudgment interest on NYLL liquidated damages or NYLL statutory

damages for violations of the wage statement and notice provisions. S*ee id.* at *4.

---

[6]     Prejudgment interest should not cover damages Plaintiff receives on late payments.
Traditionally, late payments are generally awarded as liquidated damages, and plaintiffs may
not recover prejudgment interest on amounts awarded as NYLL liquidated damages. *See
Teofilo*, 2021 WL 22716, at *4; *see also Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 547
(S.D.N.Y. 2024) (counting only the unpaid wages for purposes of prejudgment interest, even
though the plaintiffs also received liquidated damages for untimely payment).

State law provides that interest shall be at the rate of nine percent per year. *See* CPLR §

5004(a). When damages were "incurred at various times, interest shall be computed upon each

item from the date it was incurred or upon all of the damages from a single reasonable

intermediate date." CPLR § 5001(b). "Simple prejudgment interest is calculated from a singular,

midpoint date . . . by multiplying the principal by the interest rate by the time period – from a

singular, midpoint date – up until and including the date judgment is entered." *Xochimitl*, 2016

WL 4704917, at *18. Courts can determine the appropriate midpoint date by looking for the

median date between the earliest ascertainable date the cause of action existed and the date

the action was filed. *See Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-0461 (WHP) (JLC),

2014 WL 4207106, at *12 (S.D.N.Y. Sep. 20, 2014).

The earliest ascertainable date the cause of action existed for Plaintiff is December 30,

2021, while the case was filed on July 17, 2024. (*See* ECF 1, Compl.) Thus, the midpoint date

would be approximately April 9, 2023. I respectfully recommend that Plaintiff should receive

pre-judgment interest on a principal amount of $19,167.00 at a rate of nine percent per annum,

totaling $3,864.07 as of July 2, 2025, the date of this report and recommendation, with an

additional $4.73 per day for every day thereafter until the Clerk of Court enters a final

judgment.[7]

---

[7]     New York law states that the endpoint for calculating prejudgment interest should be
the "date of entry of final judgment." CPLR § 5002; *see also Schipani v. McLeod,* 541 F.3d 158,
165 (2d Cir. 2008). The period from April 9, 2023 through July 2, 2025 is 816 days, or 2.24 years.
The interest through July 2, 2025 is calculated as follows: $19,167.00 x 2.24 years x 0.09. The
daily interest is $4.73, which is calculated at $19,167 x 0.09/365.

8.   Post-Judgment Interest

Under 28 U.S.C. § 1961, Plaintiff is entitled to post-judgment interest on his money

judgment in a civil case recovered in a district court. Post-judgement interest is "calculated

from the date of the entry of judgment, as a rate equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

9.   Reasonable Attorneys' Fees and Costs

The FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys'

fees and costs. *See* 29 U.S.C. § 216(b); NYLL §§ 198, 663. Plaintiff seeks an award of both costs

and reasonable attorneys' fees, composed of $1,264.50 in costs and $8,414.50 in attorneys'

fees. (*See* ECF 20-7, Cooper Decl. Ex. G at 3.)

a.   Costs

Reasonable costs are ones that are incurred by the attorney and normally charged to

the client. *See Burns*, 635 F. Supp. 3d at 285. To recover costs, plaintiffs must submit

documentary evidence in support of those costs. *See Perez v. E.P.E. Enter. Corp.,* No. 22-CV-

6353 (JAM), 2024 WL 1632255, at *16 (E.D.N.Y. Apr. 15, 2024). Plaintiff has attached an invoice

of costs in support of her request. (*See* ECF 20-7, Cooper Decl. Ex. G at 2-5.) The costs include

filing fees ($400.00), investigator's services ($550.00), and a process server ($314.50), (*see id.* at

3). Filing fees and costs for service are the types of costs typically found to be reasonable. *See*

*Farez v. Pinery Cleaners*, 22-CV-06728 (VSB) (SDA), 2023 WL 6977058, at*6 (S.D.N.Y. July 21,

2023) (finding that awarding plaintiffs filing fee and service-related expenses to be reasonable

as part of the recovery of costs). These costs amount to a total of $714.50. Courts in this District

have rejected costs for investigative services where, as here, the plaintiff did not explain why

those services were necessary. *See Nature's Enters., Inc. v. Pearson*, No. 08-CV-08549 (JGK)

(THK), 2010 U.S. Dist. LEXIS 11306, at *32 (S.D.N.Y. Jan. 11, 2010) (declining to award

investigative fees in a Copyright Act case). Thus, I respectfully recommend that Plaintiff be

awarded $714.50 for reasonable costs.

b. *Attorneys' Fees*

Courts determine reasonable attorneys' fees based on several factors including labor

and skill required, the difficulty of the issues, the customary hourly rate of the attorney, the

attorneys' experience, reputation, and ability, and awards in similar cases. *See Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008).

Additionally, according to the "forum rule," courts typically look to the prevailing rates in the

district in which the court sits to determine reasonable rates. *See Simmons v. New York City*

*Transit Auth.*, 575 F.3d 170, 174-175 (2d Cir. 2009). Once the reasonable rate is determined,

courts will multiply the number of hours reasonably expended on the litigation by the

reasonable hourly rate. *See Arbor Hill*, 522 F.3d at 186.

i.    Reasonable Hourly Rate

Plaintiff has recommended an hourly rate of $400 for the services of her attorney Peter

H. Cooper. (*See* ECF 20-7, Cooper Decl. Ex. G at 3.) "In recent years, courts in this district have

awarded rates between $350 and $450 per hour for partners with significant employment

litigation experience." *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14-CV-2328 (GHW), 2015

WL 4522984, at *3 (S.D.N.Y. July 27, 2015). Although nothing in the record shows Mr. Cooper's

experience or that Mr. Cooper is a partner at the firm Cilenti & Cooper, PLLC, courts in this

Circuit have previously approved Mr. Cooper's requested billing rate of $400 per hour. *See*, *e.g.*, *Cordova v. D & D Rest., Inc.*, No. 14-CV-8789 (CS) (LMS), 2015 WL 6681099, at *9 (S.D.N.Y. Oct. 29, 2015) (finding that "Cooper's hourly rate is reasonable and in line with prevailing market rates in this District"); *Sanchez v. Mo Grill Corp.*, No. 23-CV-8290 (LDH) (RML), 2025 WL 1309603, at *8 (E.D.N.Y. Jan. 13, 2025) (finding $400 per hour to be a reasonable rate for Mr. Cooper). Therefore, I find that $400 per hour is a reasonable rate for Mr. Cooper.

Plaintiff provides no qualifications for the person identified in the legal service invoice as "MC," who reportedly performed 1.5 hours of work at an hourly rate of $100. (*See* ECF 20-7, Cooper Decl. Ex. G at 2.) Since courts in this district find $100 to $150 an hour to be reasonable for paralegal work, assuming that "MC" is a paralegal, awarding an hourly rate of $100 for their services is reasonable. *See*, *e.g.*, *Keivom v. New Russian Word Inc.*, No. 24-CV-3573 (DEH) (RFT), 2025 U.S. Dist. LEXIS 98952, at *28 (S.D.N.Y. May 23, 2025) (stating that awarding $100 to $150 for paralegal work is typical in this district); *N.G. v. New York City Dep't of Educ.*, No. 21-CV-8488 (PGG) (JLC), 2024 WL 133615, at *4 (S.D.N.Y. Jan. 12, 2024) (finding $125 an hour for a senior paralegal and $100 an hour for other paralegals to be reasonable rates); *Ji Li v. Ichiro Sushi, Inc.*, 14-CV-10242 (AJN), 2022 WL 1137094, at *2 (S.D.N.Y. Apr. 16, 2022) (finding $125 an hour for a paralegal to be a reasonable rate).

Thus, I respectfully recommend that Plaintiff be awarded an attorneys' fees for Mr. Cooper's service at $400 per hour and for MC's service at $100 per hour.

ii.    Reasonable Hours Expended

In determining the reasonable number of hours worked, "[t]he Court should examine contemporaneous time records that identify, for each attorney, the hours expended on a task,

44

'with a view to the value of the work product of the specific expenditures to the client's case.'" *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). Plaintiff had included an invoice including the hours billed by the attorney and paralegal, which shows they spent a total of 20 hours in connection with this action. (*See* ECF 20-7, Cooper Decl. Ex. G at 2-3). For similar cases, in which a default judgment is entered in an NYLL and FLSA action, "the high-end amount of hours spent on cases . . . is no more than 55 hours total." *Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *10 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Plaintiff's counsel's 18.5 hours spent on this case is comparable to time approved as reasonable by courts in this Circuit for work on a default judgment. *See Rodriguez,* 2018 WL 7252949, at *11 (finding 39.6 hours reasonable); *Rodriguez v. Heinchon Marcus Distribs.*, *LLC*, No. 16-CIV-1447 (VB) (PED), 2016 WL 7489067, at *9 (S.D.N.Y. Nov. 10, 2016) (finding 39.4 hours reasonable*), report and recommendation adopted*, 2016 WL 7477559 (S.D.N.Y. Dec. 28, 2016). Thus, I respectfully recommend that the Court approve as reasonable the 18.5 hours spent by Plaintiff's counsel.

When the hourly rates of $400 for Mr. Cooper and $100 for MC are multiplied by the reasonable hours expended by each of them, the resulting attorneys' fees are $7,550.00.[8] Thus,

---

[8]     Plaintiff's invoice for legal services Mr. Cooper provided contains a calculation error. (See ECF 20-7, Cooper Decl. Ex. G at 2) (listing $520 as the amount due for 2.3 hours of work of Mr. Cooper on drafting the complaint at a rate of $400 per hour, when the correct amount should be $920). I respectfully recommend that the Court adjust the award to reflect the correct total of $920 for this entry. Mr. Cooper billed 18.5 hours at a rate of $400 per hour and MC billed 1.5 hours at a rate of $100 per hour, which totals $7,550 in attorneys' fees.

I respectfully recommend that Plaintiff be awarded $7,550.00 in attorneys' fees and that

Plaintiff be awarded a total of $8,264.50 in reasonable costs and reasonable attorneys' fees.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion for a default

judgment (ECF 18) be GRANTED, with a judgment being awarded in favor of Plaintiff against

Defendants for $50,611.72, which amount reflects:

a)      $6,768.00 in unpaid weekly wages;

b)      $11,208.00 in unpaid overtime premium wages;

c)      $1,191.00 in spread-of-hours premium wages;

d)      $19,167.00 in liquidated damages;

e)      $3,864.07 in pre-judgment interest calculated as of July 2, 2025, plus $4.73 per

day for every day thereafter until the Clerk of Court enters a final judgment;

f)      $149.15 in interest on late payments;

g)      reasonable costs and attorneys' fees in the amount of $8,264.50; and

h)      post-judgment interest pursuant to 28 U.S.C. § 1961.


DATED:      July 2, 2025
            New York, New York

                                        Respectfully Submitted,


                                        _____
                                        **ROBYN F. TARNOFSKY**
                                        **United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rochon.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).